Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| ELIÚ VALENTÍN CAMPOS<br><br>Apelado<br><br>v.<br><br>DEPARTAMENTO DE JUSTICIA Y OTROS<br><br>Apelantes | KLAN202500536 | Apelación procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Civil Núm. MZ2021CV00902<br><br>Sobre: Impugnación de confiscación |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de diciembre de 2025.

El apelante, Gobierno de Puerto Rico representado por la Oficina del Procurador General, solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia (TPI) en la que declaró HA LUGAR la demanda de impugnación de confiscación. Los hechos fácticos esenciales para la comprensión de la controversia ante nosotros se detallan a continuación.

**I**

El 18 de febrero de 2021 el Negociado de la Policía de Puerto Rico (NPPR) ocupó un vehículo marca Toyota, modelo Tacoma, con tablilla 1051757 del año 2006, por alegadamente haberse utilizado en violación al Art. 20 de la Ley para la Protección de la Propiedad Vehicula, *infra*. El vehículo ocupado se encontraba registrado a nombre del señor Eliú Valentín Campos en el Registro de Vehículos de Motor del DTOP.

Posteriormente, el 3 de junio de 2021, la Junta de Confiscaciones le notificó al señor Valentín Campos la correspondiente confiscación del vehículo. Por medio de ella, dicha

Junta le indicó que el 1 de marzo de 2021 se expidió la Certificación de Inspección de Vehículos de Motor preparada por el Negociado de Investigaciones de Vehículos Hurtados la cual establece que el vehículo "tiene el federal label del poste lado izquierdo arrancado, no lo tiene. Ambos guardalodos y bonetes son reemplazo. El federal label del dash se encuentra mutilado. El chase del vehículo fue alterado, lado del chofer trae número STETU62N052035884 y no se encuentra en el sistema de la Policía". La Orden de Confiscación fue emitida el 20 de mayo de 2021.

Por su parte, el 15 de julio de 2021, Valentín Campos presentó una *Demanda* sobre impugnación de confiscación de vehículo de motor en contra del Gobierno de Puerto Rico. En resumen, alegó que compró el vehículo en el estado de Florida, Estados Unidos y luego procedió a transportarlo a Puerto Rico. Arguyó que una vez importado el vehículo pagó los arbitrios correspondientes y que el Departamento de Hacienda luego de inspeccionar el vehículo autorizó el registro de este. De igual forma, adujo que al llevar voluntariamente el vehículo a la División de Vehículos Hurtados de la Policía de Puerto Rico le informaron que existían deficiencias en cuanto a los *federal labels* de la Tacoma. Sostuvo que, tras recibir dicha información, procedió a realizar el procedimiento para justificar los cambios de piezas, es decir, entregó una declaración jurada y ciertos documentos para establecer la cadena de compra e instalación de las piezas de reemplazo.

Asimismo, manifestó que no hay un motivo razonable para creer que el vehículo de motor ha sido hurtado, adquirido ilegalmente o alterado de forma alguna, y, por tanto, lo que procedía era que, a través del DTOP, se otorgaran remplazos de los números de identificación de las piezas y se realizara la correspondiente anotación en el Registro de Vehículos. Afirmó que la determinación de la Policía fue una ilegal, toda vez que él se presentó

voluntariamente para la inspección. Por ello, solicitó al TPI la devolución su vehículo.

El 6 de agosto de 2021 el Procurador General presentó su *Contestación a Demanda* y solicitó que se declarara *Sin Lugar* la reclamación presentada por el señor Valentín Campos. Luego de varios trámites procesales, entre ellos una Vista de Legitimación Activa donde se determinó que el señor Valentín Campos está facultado para presentar el pleito que nos ocupa, se presentaron varias mociones informativas y sobre la prueba documental.

Así las cosas, el 24 de agosto de 2023 el TPI emitió una *Orden* conforme a la Regla 39.2 de Procedimiento Civil, 39 LPRA Ap. V, R. 39.2, por estar el caso inactivo por más de seis (6) meses. Concluidas diversas gestiones procesales, el 7 de octubre de 2024 se celebró el juicio en su fondo.

El 19 de marzo de 2025 el TPI dictó *Sentencia* declarando *Ha Lugar* la demanda. Mediante dicho dictamen el foro recurrido concluyó que la prueba desfilada durante el juicio no estableció que el Art. 20 de la Ley Núm. 8-1987, *infra*, fuera infligido por el señor Valentín Campos. Por el contrario, el TPI determinó que "el testimonio incontrovertido del demandante estableció de que en vista de que el motivo por el cual el vehículo no estaba apto para transitar por la vía pública, era por la falta de identificación de una piezas y de que no se encontró uno motivo razonable para creer que el vehículo de motor haya sido hurtado, adquirido ilegalmente o alterado de forma alguna, el Estado, a través de la Directoría de Servicios al Conductor del Departamento de Transportación de Obras Públicas, podía otorgar un reemplazo de los números de identificación y realizar la correspondiente anotación en el Registro de Vehículo, conforme a los procedimientos establecidos a tales efectos".

En reacción, el 2 de abril de 2025 el Procurador General presentó una *Moción de Reconsideración*. Entre otros asuntos, alegó que la ausencia de sello activa la inferencia de ilegalidad dispuesta por la Sec. 3215 (6) de la Ley de Propiedad Vehicular, *infra*, puesto que ante la falta de sello no habrá posibilidad alguna de demostrar la procedencia del vehículo. Afirmó que no podrá demostrarse su legalidad de manera alguna y que ante la ausencia de prueba que rebata la presunción de legalidad de la confiscación, ésta prevalece. En la alternativa, sostuvo que del TPI determinar que la confiscación es ilegal, solo corresponde el pago del sesenta (60%) del importe de la tasación al momento de la ocupación y no procede el pago del interés legal a partir de la fecha de la ocupación.

En respuesta, el 23 de abril de 2025 el TPI mediante *Resolución* declaró *No Ha Lugar* la referida solicitud de reconsideración. Inconforme con la determinación del TPI, el Gobierno de Puerto Rico presentó el recurso que nos ocupa, mediante el cual le imputó la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia al declarar "Con Lugar" la demanda a pesar de que la parte apelada no rebatió la presunción de legalidad que cobija al vehículo confiscado conforme a las disposiciones de la Ley para la Protección de la Propiedad Vehícular.

> Erró el Tribunal de Primera Instancia al conceder la devolución del vehículo, un remedio ajeno a lo dispuesto en la Ley Uniforme de Confiscaciones de 2011.

El 13 de junio de 2025 el Procurador General presentó una *Solicitud de Autorización y término para presentar transcripción de la prueba oral.*

Siendo ello así, el 16 de junio de 2025 mediante *Resolución* le concedimos a la parte apelante un término de treinta (30) días, contado a partir de la entrega de la regrabación de los procedimientos para presentar la transcripción de la prueba ante este Tribunal e informar si presentará un alegato suplementario. A su vez, se concedió a la parte apelada un término de veinte (20) días

para objetar la transcripción, y de treinta (30) días para oponerse al recurso, contados desde que se acoja la transcripción o desde que la parte apelante presente su alegato suplementario.

El 13 de agosto de 2025 el Procurador General presentó una *Moción para someter la transcripción de la prueba oral.* Luego, el 12 de septiembre de 2025 se presentó el *Alegato suplementario del Gobierno de Puerto Rico.*

Sin la comparecencia de la parte apelada procedemos a resolver.

**II**

**A. La Deferencia**

La norma reiterada en nuestro ordenamiento jurídico es honrar deferencia a la apreciación de la prueba, adjudicación de credibilidad y determinaciones de hecho del Tribunal de Primera Instancia. La llamada norma de la deferencia judicial está predicada en que los jueces de las salas de instancias son las que están en mejor posición para aquilatar la prueba testifical. Esto porque los jueces de instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos mientras prestan su testimonio. No obstante, la norma de la deferencia no es absoluta, no puede aplicarse, cuando la apreciación del foro primario no represente el balance más justiciero y jurídico de la totalidad de la prueba. Además, tenemos la responsabilidad ineludible de intervenir cuando la evaluación del foro primario se distancia de la realidad fáctica o es inherentemente imposible o increíble. Ahora bien, nuestra intervención no se favorece ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión. Por último, advertimos que los foros apelativos tienen la facultad de adoptar su propio criterio, cuando las conclusiones de hecho están fundamentadas en prueba pericial o documental. En cuanto a dicha prueba, los tribunales incluso

podrán descartar dicha prueba, aunque sea técnicamente correcta. *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Tan reciente como en *Peña Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1024-1025 (2024), el Tribunal Supremo de Puerto Rico ratificó la norma de la deferencia judicial a la decisión del Tribunal de Primera Instancia. La decisión ratifica que la tarea de adjudicar credibilidad y determinar lo que ocurrió realmente en un caso, depende en gran medida de la exposición del juez o la jueza a la prueba y ese trabajo lo realiza el juez de instancia.

El tribunal explicó en *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022), cuando el juzgador incurre en pasión, prejuicio o parcialidad. El juzgador incurre en esa conducta, cuando actúa movido por inclinaciones personales de tal intensidad que adopta posiciones preferenciales o rechazos respecto a las partes o sus causas que no admiten cuestionamientos, sin importar la prueba e incluso antes de que sea sometida. Por su parte, el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que hay evidencia que sostiene las conclusiones de hecho del tribunal de instancia. No obstante, existe un conflicto entre las conclusiones y el balance más racional justiciero y jurídico de la totalidad de la evidencia recibida. El error manifiesto se comete, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. La facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que a la luz de la prueba admitida no existe base suficiente que apoye su determinación.

### B. Ley de Vehículos y Tránsito

La Ley Núm. 22-2000, según enmendada, conocida como la "Ley de Vehículos y Tránsito de Puerto Rico*", 9 LPRA sec. 5001 *et*

*seq.,* dispone en su Art. 2.01 que "[n]o podrá transitar por las vías públicas ningún vehículo, vehículo de motor, arrastre o semiarrastre que no esté debidamente autorizado para ello por el Secretario [...]". 9 LPRA sec. 5002. Así pues, el Secretario, como parte de sus funciones "mantendrá un registro actualizado de todos los vehículos de motor, arrastres o semiarrastres autorizados a transitar por las vías públicas. Para tal propósito, extenderá a cada vehículo de motor, arrastre o semiarrastre inscrito, una identificación exclusiva que consistirá del número de identificación o serie del vehículo o del vehículo de motor, previamente asignado por el manufacturero, así como aquel otro número que entienda apropiado el Secretario". 9 LPRA sec. 5006. (Énfasis suplido). En lo pertinente, el Art. 1.69 la aludida ley define el número de identificación del vehículo como "el número de identificación (VIN) asignado por el fabricante o el manufacturero y utilizado por el Departamento, para la identificación exclusiva del vehículo de motor o arrastre en cuestión". 9 LPRA sec. 5001 (66).

### C. La Confiscación

La confiscación es el acto de ocupación que hace el Estado de todo derecho propietario sobre cualquier bien utilizado en la comisión de ciertos delitos. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 463 (2023). Por tratarse de una privación de propiedad, debe satisfacer las garantías mínimas del debido proceso de ley. *Id.* La confiscación representa una excepción al mandato constitucional que prohíbe al Estado tomar propiedad privada para fines públicos sin que exista justa causa. *Id.* En este sentido, los tribunales estamos obligados a interpretar las disposiciones atinentes a las confiscaciones de manera restrictiva, debido a sus implicaciones constitucionales. *Reliable Financial v. ELA,* 197 DPR 289, 303 (2017). Asimismo, nuestro ordenamiento jurídico contempla dos variantes de la confiscación: la confiscación *in personam* y la

confiscación *in rem. Universal Ins. y otro v. ELA y otros,* supra, págs. 463-434.

En particular, la Ley Núm. 119-2011, según enmendada, conocida como la "Ley Uniforme de Confiscaciones de 2011", establece como política pública el crear mecanismos que faciliten y agilicen el proceso de confiscación de bienes muebles e inmuebles, los cuales, a su vez, deben garantizar los derechos y reclamos de las personas afectadas por una confiscación. En conformidad con la exposición de motivos esta ley, se reconoce que la confiscación representa un disuasivo a la actividad criminal. 34 LPRA sec. 1724.

El Tribunal Supremo ha reiterado que "la confiscación es un procedimiento de naturaleza *in rem* y, como tal, es independiente del procedimiento criminal que pudiera presentarse en contra del presunto autor del delito". *Coop. Seg. Múlt. et als. v. ELA et al.*, 209 DPR 796, 810 (2022). En específico, nuestro máximo foro judicial local dejó establecido lo siguiente:

> [L]a confiscación civil puede prevalecer aun cuando el Gobierno no haya presentado cargo alguno, ya que lo determinante es si alguna actividad delictiva se ha cometido en el vehículo o mediante su uso, aunque no haya sido cometida por el poseedor o conductor del vehículo, es decir, independientemente de quién pudo cometer el acto delictivo. Véanse: Art. 8 de la Ley de Confiscaciones, supra; *Figueroa Santiago et als. v. ELA,* supra; *First Bank, Univ. Ins. Co. v. E.L.A.,* 156 DPR 77, 83 (2002). Claramente, la Ley de Confiscaciones no admite otra interpretación. *Coop. Seg. Múlt. et als. v. ELA et al.,* supra, págs. 810-811.

En virtud de lo anterior, el Art. 9 de la referida ley dispone que son bienes sujetos a confiscación toda propiedad que:

> [R]esulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, **leyes contra la apropiación ilegal de vehículos**, [...]". 34 LPRA sec. 1724f.

A tales efectos, la confiscación de un vehículo constituye una privación de la propiedad que obliga a la autoridad pública a cumplir con todas las garantías que el debido proceso de ley requiere. *Reliable Financial v. ELA,* supra, pág. 316 (citando a *García v. Tribunal Superior,* 91 DPR 153 (1964). Ahora bien, se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. *Universal Ins. y otro v. ELA y otros,* supra, pág. 468; 34 LPRA sec. 17241. Al igual, que el demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación. *Id.*

### D. Ley para la Protección de Propiedad Vehicular

La Ley Núm. 8-1987, según enmendada, conocida como la "Ley para la Protección de la Propiedad Vehicular*"*, faculta a los agentes del orden público a detener e inspeccionar y retener para investigación por el período de tiempo que razonablemente sea necesario que no exceda de treinta (30) días calendario, cualquier vehículo o pieza cuando [...] [a]lguno de los números de serie o de identificación del vehículo o de partes imprescindibles del mismo que se encuentren a vista abierta hayan sido borrados, mutilados, alterados, sustituidos, sobrepuestos, desprendidos, adaptados o de alguna forma modificados. 9 LPRA sec. 3213.

En particular, el Art. 16 de la Ley Núm. 8-1987, *supra,* dispone que se podrá inferir que el imputado tenía conocimiento personal de que el vehículo o pieza había sido adquirido de forma ilícita cuando ocurriera una o más de las siguientes circunstancias: [...] (3) cuando el imputado no pueda mostrar prueba fehaciente del precio pagado, cuándo y de quién adquirió el vehículo o pieza o cuándo la transacción se llevó a cabo; (4) cuando el imputado por sus conocimientos, experiencia, profesión, trabajo u oficio que

desempeña debió razonablemente conocer que se trataba de un vehículo o pieza adquirida de forma ilícita; [...] (6) cuando el vehículo o pieza muestra modificaciones, alteraciones, o los números de identificación están alterados, o la licencia o tablilla no corresponde a la unidad [...]. 9 LPRA sec. 3215.

Así pues, el Art. 20 de la referida ley tipifica como delito grave de cuarto grado el que una persona "voluntariamente borre, mutile, cubra, altere, destruya, remueva, desprenda o en alguna forma modifique los números de motor o serie o cualquier otro número de identificación impreso por el manufacturero o fabricante o asignado por el Secretario de Transportación y Obras Públicas de un vehículo de motor o de alguna pieza del mismo". 9 LPRA sec. 3220. Siguiendo esa misma lógica, el Art. 21 de la Ley Núm. 8-1987, *supra*, dispone que incurrirá en delito menos grave "toda persona que voluntariamente y a sabiendas posea alguna pieza o vehículo de motor con los números de motor o serie, o cualquier otro número de identificación impreso por el manufacturero o fabricante o asignado por el Secretario del Departamento de Transportación y Obras Públicas borrado, mutilado, alterado, destruido, desprendido o en alguna forma modificado".

En este contexto, la mera posesión del vehículo o pieza que se encuentre en el estado descrito anteriormente constituirá evidencia *prima facie* de su posesión voluntaria. *Centeno Rodríguez v. E.L.A.*, 170 DPR 907, 914 (2007). Ahora bien, ésta presunción puede ser derrotada. *Id.*

**III**

En el presente caso, el Procurador General sostiene que incidió el TPI al declarar *Con Lugar* la *Demanda* de impugnación de confiscación presentada por el señor Valentín Campos, a pesar de que éste no rebatió la presunción de legalidad que cobija al vehículo confiscado conforme a las disposiciones de la Ley Núm. 8-1987,

*supra*. Asimismo, adujo que erró el TPI al conceder la devolución del vehículo. Le asiste la razón. Nos explicamos.

De entrada, es menester resaltar que el foro primario determinó que no se estableció bajo ningún concepto que el vehículo objeto del presente litigio se utilizó para la comisión de algún delito conforme al Art. 8 de la Ley Núm. 8-1987, *supra.* En cambio, intimó que el señor Valentín Campos cumplió con los procedimientos establecidos, toda vez que prestó una declaración jurada y solicitó la reasignación de los números de serie, a través de la certificación de un perito hojalatero. Además, dicho foro entendió que el testimonio del demandante estableció que el hecho de que el *federal label* se encontrara mutilado fue producto del impacto de un segundo accidente, y que tras arreglar el daño del accidente se colocó nuevamente el *label* "original".

Ahora bien, un examen del expediente muestra que el señor Valentín Campos es comerciante y se dedica a comprar y vender vehículos desde hace aproximadamente veinte (20) años.[1] En el año 2020 compró el vehículo objeto del presente litigio y asumió el riesgo de comprarlo observándolo mediante fotografías.[2] Así pues, el señor Valentín Campos vio por primera vez el vehículo en el puerto de Jacksonville, FL, tras haber sido trasladado desde el estado de Texas.[3] El señor Valentín Campos testificó que advino en conocimiento de que los *labels* estaban pintados por su hermano luego de que éste inspeccionó el vehículo y le envió fotografías.[4] Por lo que ese **mismo año** llevó el vehículo a un hojalatero quien certificó que las piezas estaban bien instaladas.[5] Pese a dichas deficiencias, varios meses después el señor Valentín Campos procedió a vender

---

[1] *Véase*, Transcripción del juicio en su fondo el 7 de octubre de 2024, págs. 27, líneas 15-23; pág. 28; líneas 1-24.
[2] *Id.*, pág. 28; líneas 11-24.
[3] *Id.*, pág. 29; líneas 16-17
[4] *Id.*, pág. 30; líneas 17-24, pág. 31; líneas 1-7.
[5] *Id.*, pág. 31; líneas 11-12.

el vehículo al señor Wilfredo Rodríguez Droz sin realizar algún trámite gubernamental en relación con las irregularidades de los *labels*.[6]

Además, a preguntas del Ministerio Público, el señor Rafael Quintana Soto, el hojalatero, afirmó que emitió la aludida certificación indicando que las piezas estaban bien instaladas en noviembre del **2023**. Aún más relevante, el agente Wilfredo Lugo Santiago declaró que se solicitó el expediente del vehículo en el CESCO de Arecibo, sin embargo, el mismo no fue provisto ya que no existía.[7] Es decir, dicho vehículo no aparece en ningún registro.[8] A su vez, es el CESCO de Mayagüez el que tiene jurisdicción en cuanto a ello.[9] Al ser indagado sobre este tema, el señor Valentín Campos se limitó a decir que realizó la inscripción del vehículo mediante los servicios de un gestor, no obstante, no le brindó más detalles al Agte. Lugo Santiago.[10] Dicho agente explicó en el juicio que "cuando una persona trae un vehículo exportado de Estados Unidos [...] el vehículo **tiene que pasar por la línea de CESCO**, que son los que verifican los carros para ver...para poder inscribirlos en Puerto Rico y **cuando ellos encuentran las irregularidades [...] lo refieren a Vehículos Hurtados**".[11]

Incluso, en lo concerniente al proseso de inspección y al accidente que provocó el desprendimiento de uno de los *labels* el Agte. Moret Rondón expresó lo siguiente:

> R: Toda...todo vehículo que es comprado en subastas todo vehículo personal que resulta en un accidente, que se le cambian piezas esenciales. Piezas esenciales es bonete, guardalodo, puertas, (ininteligible) *bumpers*, motor transmisión son inspeccionados para poder, este, hacer correspondiente inscripción de piezas.[12]
> P: ¿Cómo se hace ese proceso de inspección?

---

[6] *Id.*, pág. 31; líneas 14-23.
[7] *Id.*, pág. 83; líneas 7-24.
[8] *Id.*, línea 15.
[9] *Id.*, pág. 85; líneas 1-9.
[10] *Id.*, pág. 84; líneas 1-23.
[11] *Id.*, pág. 84; líneas 11-16.
[12] *Id.*, pág. 47, líneas 19-24.

R: Ese procedimiento estipula que el vehículo debe llegar a la división de Vehículos Hurtados con todos los aditamentos de seguridad funcionando, tales como luces, señales, bocina cinturones, bolsas de aire. Debe tener todas sus piezas, este, en completo orden y correctamente instaladas **con toda la documentación de donde se adquirieron las piezas, quién repara certifica la labor y una declaración jurada haciendo constar lo hechos y el por qué la persona está cambiando esas piezas**.

P: ¿Y cómo se realiza la inspección?

R: La inspección es una inspección visual, **se revisa todas las partes y componentes del vehículo, que todos los números de serie en el caso que sea un vehículo *full label*, que todos los números macheen con el número de serie de manufacturero, que es el VIN Number**.

P: ¿Cuál es la diferencia entre un *federal label* y un *label normal*?

R: Ok. El *label* normal es el *label* el manufacturero que le asigna a cada pieza individual. Toda pieza removible lleva un número de serie con diecisiete caracteres compuesto entre una combinación de números letras. En el caso de *federal label* y algunos vehículos el *federal label* viene en el poste del lado el conductor o si no en la puerta del conducto[r]. Ese *federal label* las características de él vienen siendo los diecisiete[13] caracteres, año de fabricación, fecha de fabricación y a y aditamentos de seguridad la cual trae el vehículo **para poder transitar por las vías de Puerto Rico y Estados Unidos.**

P: Específicamente en relación a la inspección del vehículo Toyota, año 2006, color vino, Tacoma perteneciente al señor Eliú Valentín, ¿cuál fue su participación, si alguna?
R: Ok. Ese día, este, se sometió ese vehículo para inspección. Yo me encontraba en la línea de inspección con el agente Martell, la cual yo superviso la línea. El vehículo se sometió a inspección por un cambio de pieza y unos...y el frente completo del vehículo. El frente era bonete, ambos guardalodos y el *bumper* delantero.

**P: ¿Cuál fue el resultado de esa inspección?**

R: Pues en esa inspección pudimos, este, observar en la serie de documentos que fueron sometidos para inspección, el vehículo fue un vehículo, este, importado. Llegó de...llegó de Estados Unidos a través de una barcaza. El vehículo, este, cuenta con una serie de documentos incluyeron el CARFAX. Cuando esos vehículos llegan de allá, los de importados usados, nosotros solicitamos el CARFAX para ver daños ocultos y **en la inspección resulta que el vehículo pues tenía el frente completamente reemplazado por un frente**

---

[13] *Id.*, pág. 49: líneas 1-24.

**más adelantado, tenía el**[14] *federal label* **desprovisto de él en el poste izquierdo y el VIN Public, que es el VIN que está en el** *dash* **está mutilado.**

P: Una vez usted encontró esos hallazgos, ¿qué usted hizo, si algo?

R: Pues ahí, este, yo por mi conocimiento, pues, y certificado como Técnico de Identificación de Vehículos Hurtados por la Policía de Puerto Rico yo desmonto todo el lado del conductor, viene siendo la goma que va en el borde donde la puerta cierra, en la...en la cabina para verificar qué había pasado con ese *label* **cuando me percato que esa cabina era una cabina blanca la estaba color vino.** Al yo desmontar porque viendo el CARFAX que había un **daño moderado** en la cabina, **esa cabina no tiene ningún tipo de reparación. Por eso yo que para entiendo el** *label* **fue removido utilizar esa cabina. Así...así (ininteligible) ilegalmente.**[15]

Conviene destacar, en primer lugar, que la confiscación civil puede proceder incluso cuando el Gobierno no haya presentado cargos. Puesto que lo determinante es si alguna actividad delictiva se cometió en el vehículo o mediante su uso, aunque dicha actividad no haya sido realizada por el poseedor o conductor del vehículo. *Coop. Seg. Múlt. et als. v. ELA et al.*, supra, págs. 810-811. En segundo lugar, el Art. 16 de la Ley Núm. 8-1987, *supra*, dispone que se podrá inferir que el imputado tenía conocimiento personal de que el vehículo o pieza había sido adquirido de forma ilícita: a) cuando el imputado por sus **conocimientos, experiencia, profesión, trabajo u oficio** que desempeña debió razonablemente conocer que se trataba de un vehículo o pieza adquirida de forma ilícita, y b) cuando **el vehículo o pieza muestra modificaciones, alteraciones, o los números de identificación están alterados**, o la licencia o tablilla no corresponde a la unidad. 9 LPRA sec. 3215.

Nótese que el señor Valentín Campos cuenta con aproximadamente veinte (20) años de experiencia como comerciante de compra y venta de vehículos de motor. Igualmente, el Agte. Moret

---

[14] *Id.*, pág. 49; líneas 1-23.
[15] *Id.*, pág. 50; líneas 1-15.

Rondón aclaró que las deficiencias antes descritas son insubsanables, porque su número de serie, el VIN Public, que es el VIN del *dash* y el VIN de la cabina no existen.[16] De manera que no podría probar que dicha cabina es la del número que indica el título.[17] En síntesis, la cabina no le pertenece al vehículo, como tampoco los dos guardalodos, el bonete y el *bumber* frontal.[18] Además, no existe prueba alguna que acredite la adquisición legítima de las piezas en cuestión. En cambio, podemos inferir que el señor Valentín Campos tenía conocimiento personal de que el vehículo o piezas habían sido adquiridas de forma ilícita. Esto, en conexión a la infracción del Art. 20 de la Ley Núm. 8-1987, *supra,* relacionado con la querella 2021:5-700:000275.[19] De otro lado, conforme al Art. 15 de la Ley Núm.119-2011, *supra,* la confiscación realizada debe presumirse legal y correcta independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos. 34 LPRA sec. 17241.

Tras un minucioso análisis del expediente, colegimos que el señor Valentín Campos no logró derrotar la presunción de legalidad de la confiscación realizada el 20 de mayo de 2021, por lo que no es posible sostener el dictamen del TPI. "Sabido es que los tribunales no debemos creer lo que nadie más creería". *Pueblo v. Resto Laureano,* 206 DPR 963 (2021). Consecuentemente, el primer error alegado fue cometido. Siendo ello así, al haber resuelto que la confiscación del vehículo en cuestión es legal, resulta improcedente atender los méritos del segundo señalamiento de error.

---

[16] *Id.*, pág. 58; líneas 1-4.
[17] *Id.*, línea 3.
[18] *Id.*, líneas 9-10.
[19] *Véase,* Apéndice IX del recurso, pág. 82.

**IV**

Por lo antes expuesto, se revoca la *Sentencia* apelada y se devuelve el caso al foro primario para los trámites de rigor de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones